# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN ALLEN, | 1:18-cv-01187-GSA-PC |
| Plaintiff, | **FIRST SCREENING ORDER** |
| vs. | **ORDER DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM, WITH LEAVE TO AMEND** |
| V. BENTACOURT, et al., | **(ECF No. 1.)** |
| Defendants. | **THIRTY-DAY DEADLINE TO FILE AMENDED COMPLAINT** |

**I.     BACKGROUND**

Kevin Allen ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. On August 31, 2018, Plaintiff filed the Complaint commencing this action, which is now before the court for screening. 28 U.S.C. § 1915. (ECF No. 1.)

1

## II. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

## III. SUMMARY OF COMPLAINT

Plaintiff is presently incarcerated at Kern Valley State Prison (KVSP) in Delano, California, where the events in the Complaint allegedly occurred. Plaintiff names as defendants Correctional Officer (C/O) V. Bentacourt, C/O R. Valdovinos, C/O S. Ochoa, and Lieutenant Sandaval ("Defendants").

Plaintiff's allegations follow. On January 23, 2018, about 4:30 p.m., Plaintiff's cell mate, Burton, used the toilet in their cell and the toilet would not flush. When Plaintiff came out for

PM medications he told the officers in the tower about the broken toilet. John Doe tower officer (not a defendant) said he would let C/O Bentacourt know as soon as they were finished packing another inmate's property. Officers Betancourt and Valdovinos were packing inmate Johnson's property. On his way back from PM medications Plaintiff told defendant Valdovinos that his toilet wouldn't work, and Valdovinos said to let them finish with the packing. Plaintiff went back to his cell.

About 6:00 p.m., Plaintiff tried to flush the toilet again and the human waste overflowed all over his floor. Plaintiff called another inmate, Robert, and asked him to call the tower and tell them what happened and that Plaintiff needs a mop. Robert opened the cell door and Plaintiff and his cell mate stepped out. The tower officer told Plaintiff that as soon as the officers come back he would let them know. Plaintiff asked the tower officer if Plaintiff and his cell mate could move to Cell #113. The tower officer said this ain't his building and he would let the building C/Os know.

Plaintiff and his cell mate stood in the day room for about an hour. When C/O Valdovinos came back he was passing out mail. Plaintiff asked him about moving to Cell #113. Instead, Valdovinos tried to move them to Cell #206. Plaintiff told him that he can't move to the top tier due to his back and showed him the chrono.

About 7:52 p.m., Plaintiff and his cell mate went to the office and C/O Bentacourt gave a mop to the cell mate. Plaintiff asked C/O Valdovinos again if they could move to Cell #113 and he said that Cell #113 is flagged, but he would put in a work order. Valdovinos said they would fix it in the morning because Plaintiff is in an ADA cell.

The next day, on January 24, 2018, C/O Valdovinos was passing out mail. When he got to Plaintiff's door he asked if the toilet was fixed. Plaintiff said no and told him he couldn't breathe in the cell. Plaintiff personally showed him the human waste and toilet paper that was in the toilet. Later, C/O Bentacourt came by closing the food slots and asked Plaintiff if they fixed the toilet. Plaintiff said no, showed him the toilet and its contents and told him this is a violation of Plaintiff's rights.

///

At AM pill call, Plaintiff told a John Doe officer (not a defendant) about the toilet and asked if Plaintiff and his cell mate could move to Cell #113. The officer said yes. About 20 minutes later the officer came back and told Plaintiff they couldn't move to Cell #113 because the inmate who was in that cell is out to the hospital and they could only give up that cell in an emergency. Plaintiff contends that his situation was an emergency because he couldn't sleep or eat and he had vomited four times.

About 2:34 p.m., the tower guard let Plaintiff go to the concrete yard to use the bathroom there. The guard asked Plaintiff if his toilet was fixed yet, and Plaintiff said no. The day before, Plaintiff had to use the overflowed toilet in his cell.

On January 25, 2018, at about 6:02 a.m., defendant C/O S. Ochoa came by and asked Plaintiff and his cell mate if they wanted to take showers. Plaintiff said no and asked him if he could find them another cell. Plaintiff also said he needed to see a nurse because he couldn't take the smell and felt dizzy. C/O Ochoa said he would make a call. About 6:43 a.m., C/O Ochoa was locking the tray slots and Plaintiff asked him when they were going to get out of the unsanitary cell, and Ochoa said it's out of his hands. Plaintiff told him he would let a federal court know, and he said, "So what." (ECF No. 1 at 23:10.)

At 9:10 a.m., Plaintiff went to the yard and saw Lieutenant Sandaval at the gate by the program office. Plaintiff asked Sandaval if he could move them and Sandaval asked why. Plaintiff told him that for a few days the toilet had not been working and was full of human waste and they couldn't breathe, sleep, or eat. Lt. Sandaval said he would make a call.

About 9:15 p.m. at mail pick-up, Plaintiff asked C/O Valdovinos when they were going to fix the toilet. He said he had submitted a work order. Plaintiff told him it is unconstitutional for them to live in a cell with a non-working toilet filled with human waste.

On January 26, 2018, at about 6:00 a.m., defendant C/O Ochoa was doing unlocks and Plaintiff asked if they could talk to his boss because Plaintiff couldn't take being in the cell with human waste. Plaintiff said he would let a judge know what they are doing and Ochoa asked Plaintiff, "What's that in your nose?" (ECF No. 1 at 24:11-13.) Plaintiff said it was a piece of deodorant because the smell was so bad.

About 11:40 a.m., when C/O Ochoa was doing the count, Plaintiff again asked him when the toilet would be fixed. He said he would make a call.

About 3:41 p.m., C/O Bentacourt came by passing out razors. Plaintiff asked him how long they were going to be in the unsanitary cell. He said they had submitted a work order.

On January 27, 2018, about 5:40 a.m., C/O Ochoa was doing unlocks and came to Plaintiff's door asking if Plaintiff and his cell mate wanted showers. They said no and asked when the toilet would be fixed. He told them it was the weekend and there was no one to fix it. Plaintiff asked for soap, and C/O Ochoa said they didn't have any.

On January 29, 2018, the plumber came and fixed the toilet. The officers had to turn on the fans in the day room because the smell of human waste was so bad. Plaintiff was forced to live with a non-working toilet in his cell full of human waste, for seven days.

Plaintiff requests compensatory and punitive monetary damages.

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of

state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A. Conditions of Confinement -- Sanitation

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety. See Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Helling v. McKinney, 509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)

"The circumstances, nature, and duration of a deprivation of [ ] necessities must be considered in determining whether a constitutional violation has occurred." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000), cert. denied, 532 U.S. 1065, 121 S.Ct. 2215, 150 L.Ed.2d 209 (2001). When considering the conditions of confinement, the court should consider the amount of time to which the prisoner was subjected to the condition. See Hutto v. Finney, 437 U.S. 678, 686-87 (1978). "[S]ubjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." Anderson v. County of Kern, 45 F.3d 1310, 1314, as amended, 75 F.3d 448 (9th Cir. 1995).

"Usually, a more offensive condition will be of constitutional significance when it exists for even a short time, while a less offensive condition will be of constitutional significance only when it has existed for a much longer time." Cockcroft v. Kirkland, 548 F.Supp.2d 767, 775

(N.D. Cal. 2008)  The more basic the need, the shorter the time it can be withheld.  See Johnson, 217 F.3d 726, 731 (9th Cir. 2000).  The odor, unsanitary conditions, and risk posed by raw sewage is obvious to a layperson and is why cities provide plumbing and waste treatment plants. Moak v. Sacramento Cty., No. 215CV0640MCEKJNP, 2016 WL 393860, at *3–4 (E.D. Cal. Feb. 2, 2016), report and recommendation adopted, No. 215CV0640MCEKJNP, 2016 WL 8731337 (E.D. Cal. Mar. 4, 2016).  Substantial deprivations of shelter, food, drinking water, or sanitation for four days, for example, are sufficiently serious to satisfy the objective component of an Eighth Amendment claim.  See id. at 732–733; Anderson, 45 F.3d at 1314.  A conditions of confinement claim may also arise from the type of "egregious circumstances" alleged by Plaintiff in this matter.  Walker v. Schult, 717 F.3d 119, 127 (2nd Cir. 2013) (citing, *inter alia*, LaReau v. MacDougall, 473 F.2d 974, 978 (2d Cir. 1972) ("Causing a man to live, eat and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted."); Gaston v. Coughlin, 249 F.3d 156, 165-66 (2d Cir. 2001) (inmate stated an Eighth Amendment claim where the area in front of his cell "was filled with human feces, urine, and sewage water" for several consecutive days).

Long-term unsanitary conditions violate the Eighth Amendment, as do non-working toilets.  See, e.g., Hearns v. Terhune, 413 F.3d 1036, 1041–42 (9th Cir. 2005) (allegations of serious health hazards in disciplinary segregation yard for a period of nine months, including toilets that did not work, sinks that were rusted and stagnant pools of water infested with insects, and a lack of cold water even though the temperature in the prison yard exceeded 100 degrees, enough to state a claim of unconstitutional prison conditions); Anderson, 45 F.3d at 1314-15, as amended, 75 F.3d 448 (placement of violent and mentally disturbed inmates in safety cell that was dirty and smelly with a pit toilet for short duration (up to one day) did not violate 8th Amendment).

A prison official violates the Eighth Amendment when he acts with deliberate indifference to a known objectively serious risk to a prisoner's health or safety.  See Farmer, 511 U.S. at 834.  A plaintiff must also allege facts to support that a defendant acted with deliberate indifference. Deliberate indifference is a higher standard than negligence or lack of ordinary due

care for the prisoner's safety. Id. at 835. To state a claim of deliberate indifference, a plaintiff must meet a two-part test. First, the alleged constitutional deprivation must be, objectively, "sufficiently serious"; the official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." Id. at 834 (citations omitted). Second, the prison official must have a "sufficiently culpable state of mind," i.e., he must act with deliberate indifference to inmate health or safety. Id. (citations omitted). In defining "deliberate indifference" in this context, the Supreme Court has imposed a subjective test: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837 (emphasis added).

Here, Plaintiff complains of being exposed for seven days to raw sewage when the toilet in his cell overflowed onto the floor. By the second day, Plaintiff could not breathe well, sleep, or eat, and had vomited four times because of the smell. By the third day, Plaintiff felt dizzy. By the seventh day, officers had to turn on fans in the day room because the smell of human waste was so strong. Plaintiff asked for soap and to be moved to an empty cell until the toilet was fixed, and his requests were denied. Liberally construed, these allegations are sufficiently serious to satisfy the objective component of an Eighth Amendment claim.

However, Plaintiff has not shown that any of the Defendants believed Plaintiff was at a substantial risk of serious harm because of the broken toilet. Plaintiff showed each of the Defendants the human waste in the toilet, and there is no indication that any of them believed Plaintiff was in such danger that immediate action was needed. Under Plaintiff's allegations, Defendants acted reasonably by submitting a work order, making follow-up phone calls, providing the inmates with a mop, attempting to find an empty cell available for Plaintiff and his cell mate, and offering showers to the inmates. In addition, as to each individual defendant, Plaintiff must demonstrate that the particular defendant had to authority to make a cell change or otherwise remedy the situation for the Plaintiff. Therefore, Plaintiff has not alleged facts satisfying the subjective component of an Eighth Amendment claim.

Accordingly, Plaintiff fails to state a cognizable claim for adverse conditions of confinement under the Eighth Amendment. Plaintiff shall be granted leave to file an amended complaint curing the deficiencies in this claim.

## V. CONCLUSION AND ORDER

For the reasons set forth above, the court finds that Plaintiff fails to state a claim in the Complaint upon which relief may be granted under § 1983. Therefore, the Complaint shall be dismissed, with leave to amend. Plaintiff shall be granted thirty days in which to file a First Amended Complaint curing the deficiencies discussed above.

The First Amended Complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 556 U.S. at 678; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555). There is no *respondeat superior* liability, and each defendant is only liable for his own misconduct. Iqbal, 556 U.S. at 677. Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones, 297 F.3d at 934 (emphasis added). Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of adding new defendants for unrelated claims. Plaintiff should also note that he has not been granted leave to add allegations of events occurring after the initiation of this suit on August 14, 2018.

Plaintiff is advised that an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F. 3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be complete in itself without reference to the prior or superceded pleading, Local Rule 220. Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Complaint, filed on August 31, 2018, is DISMISSED for failure to state a claim under § 1983, with leave to amend;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint curing the deficiencies identified in this order;
4. Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:18-cv-01187-GSA-PC; and
5. If Plaintiff fails to comply with this order, this action will be dismissed for failure to state a claim.

IT IS SO ORDERED.

Dated: **July 24, 2019**          **/s/ Gary S. Austin**
                              UNITED STATES MAGISTRATE JUDGE